# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **N.Z.**

**No. 18-0995** (Mercer County 17-JA-056-WS)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.Z., by counsel P. Michael Magann, appeals the Circuit Court of Mercer County's August 21, 2018, order terminating his parental rights to N.Z.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Thomas M. Janutolo, Jr., filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, the DHHR filed an abuse and neglect petition that alleged petitioner, a resident of South Carolina, neglected the child by failing to provide support and by discouraging the child's mother from seeking financial assistance to support the child. At the time, the mother lived with the child in West Virginia and petitioner did not reside in the home. The petition contained additional allegations against the child's mother, including her inability to properly care for the child. According to the petition, a Child Protective Services worker observed the mother changing the child's diaper and noticed "severe diaper rash" that was "very red and irrita[ted] with healing sores." According to the mother, she had been prescribed medication for this condition two weeks before the worker's visit, yet the condition persisted.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The worker further observed the mother's failure to clean feces off the child's genitals, which presented a risk for continued diaper rash. According to the worker, the child and her clothes were generally dirty and the child appeared to be "developing a slight rash due to uncleanliness." The petition further alleged issues related to the home's condition, including the presence of a cockroach infestation.

In April of 2017, the circuit court held an adjudicatory hearing. The DHHR presented evidence that petitioner failed to provide the child with support. Petitioner testified in his defense, but the circuit court ultimately found that his testimony lacked credibility. Based upon this evidence, the circuit court adjudicated petitioner as having neglected the child and further granted him a post-adjudicatory improvement period. Thereafter, a case plan was adopted that required petitioner to (1) participate in and complete parenting classes and training; (2) pay child support; and (3) establish a bond with the child through supervised visitation. The record shows that, at least initially, petitioner traveled from South Carolina to West Virginia for monthly visitation with the child. Additionally, the DHHR was able to arrange for petitioner to receive services, such as parenting classes and training, in his home state of South Carolina. According to the parties, the circuit court later granted petitioner a post-dispositional improvement period.

After the DHHR filed a motion to terminate petitioner's parental rights, the circuit court held a dispositional hearing in August of 2018. Petitioner did not attend but was represented by counsel.[2] The DHHR presented testimony that, although initially compliant, petitioner had not complied with the terms of his case plan since approximately November of 2017. This included a total lack of visits with the child during that time period. The DHHR worker testified that although the DHHR was able to arrange for some services in South Carolina, it was unable to identify a psychologist to perform an evaluation of petitioner in that state. Accordingly, the DHHR arranged for petitioner to submit to a psychological evaluation in Princeton, West Virginia. According to the DHHR worker's testimony, petitioner refused to submit to the evaluation because he claimed the DHHR was biased against him. Based upon this evidence, the circuit court ultimately terminated petitioner's parental, custodial, and guardianship rights. It is from the dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

---

[2]In the petition for appeal, counsel indicates that he was appointed to represent petitioner in the proceedings below at a hearing in July of 2018 that was originally scheduled as a dispositional hearing. Counsel further asserts that he was unable to establish contact with petitioner prior to the dispositional hearing in August of 2018. Without citation to the record, in contradiction to the West Virginia Rules of Appellate Procedure, counsel asserts that he requested a continuance of the August of 2018 dispositional hearing in order to contact petitioner, but that the circuit court denied the request. *See* W. Va. R. App. Pro. 10(c)(4) (requiring that a brief contain a statement of the case "[s]upported by appropriate and specific references to the appendix or designated record").

[3]The child's mother retains her parental rights. According to the DHHR, the current permanency plan is reunification with the mother, who is participating in an improvement period. The concurrent permanency plan is adoption by the current foster family.

2

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that his failure to attend visitations and the psychological evaluation due to transportation issues constitute insufficient grounds upon which to terminate his parental, custodial, and guardianship rights. According to petitioner, a DHHR worker testified that he "told her that he was having car trouble and therefore [was] not able to travel from South Carolina to West Virginia for visits between November 2017 and March 2018." He further argues that the fact that the DHHR arranged for some services to be completed in South Carolina evidences the reality that the DHHR recognized that, in order for all services to be successful, they needed to be provided in his home state. Accordingly, petitioner argues that there was insufficient evidence to support termination of his parental, custodial, and guardianship rights. We do not agree, however, as petitioner's argument misstates the record and fails to acknowledge the reality of his noncompliance with services.

Petitioner argues that he "worked within his means and financial ability, based upon where he resided and his access to transportation to address all of the issues and satisfy the goals set forth in his improvement period and Family Case Plan." He goes on to argue that the issue that ultimately resulted in his noncompliance was his inability to travel from South Carolina to West Virginia. However, petitioner ignores that fact that he admits in his brief that the DHHR provided testimony at disposition that "there had been no compliance by [petitioner] with the terms of his Family Case Plan" for the nine months prior to the hearing. As noted above, petitioner's case plan required that he participate in and complete parenting classes and training, services that he acknowledges were provided in South Carolina. Despite the DHHR arranging for these services to be provided locally, petitioner cites to no evidence that he completed this requirement or otherwise provided any evidence to refute the DHHR worker's testimony regarding the extended period of his complete noncompliance.

Moreover, petitioner fails to recognize that his explanation to the DHHR regarding missed visits covered only the period from November of 2017 through March of 2018 without accounting for the additional period from March of 2018 through the dispositional hearing in

3

August of 2018. West Virginia Code § 49-4-610(4) explicitly provides that "the respondent shall be responsible for the initiation and completion of all terms of the improvement period." While petitioner argues that he informed the DHHR he was having transportation issues, he cites to nowhere in the record where he requested that the DHHR make any accommodation so that he could fulfill his scheduled visitations with the child, including providing assistance with transportation. Instead, petitioner unilaterally decided not to visit with the child for approximately nine months based on transportation issues that are supported only by his self-serving assertions which lack corroboration. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Accordingly, it is clear that the circuit court did not err in relying on petitioner's failure to visit with the child for the majority of the proceedings.

Similarly, petitioner argues that his psychological evaluation should have been scheduled with a provider in South Carolina. However, in advancing this argument there are two important issues that petitioner acknowledges – and fails to refute – in his brief. The first is that the record shows that the DHHR attempted to accommodate petitioner by locating a provider in South Carolina who could perform the evaluation in question. It was only after the DHHR determined that it would be unable to provide petitioner with an evaluation in South Carolina that the DHHR scheduled the evaluation in West Virginia. Moreover, petitioner even acknowledges that the DHHR provided testimony that he "agreed to change the location of his psychological evaluation . . . to West Virginia." Second, the DHHR provided testimony that petitioner later refused to submit to the evaluation because he claimed that "West Virginia was biased and he would not complete the evaluation in West Virginia." Given this evidence, it is disingenuous for petitioner to argue on appeal that transportation issues were the sole reason he did not comply with the scheduled evaluation. Instead, it appears that petitioner chose not to comply with the service offered after he agreed to a change in location.

According to West Virginia Code § 49-4-604(b)(6), a circuit court may terminate parental, custodial, and guardianship rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given his complete lack of

compliance with services for the nine months preceding the dispositional hearing. Further, we have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Given that the child is only two years old, coupled with petitioner's failure to visit with the child for nine months prior to disposition, it is clear that the child's welfare required termination of petitioner's parental, custodial, and guardianship rights. Accordingly, we find no error in the circuit court's decision.[4]

Lastly, because the proceedings involving the mother are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

---

[4]In support of this assignment of error, petitioner also argues that because he was not present at the dispositional hearing and had been appointed new counsel, the circuit court erred because he "should have been able to have the opportunity to appear at the hearing and [should] have been given the opportunity to meet his new counsel" so that he could have requested that the DHHR "accommodate the difficulty he faced complying with the terms of his improvement period." We find this argument to be without merit. While it is true that West Virginia Code § 49-4-604(a)(2) requires the circuit court, after the filing of a case plan, to "forthwith proceed to disposition giving both the petitioner and respondents an opportunity to be heard," petitioner fails to recognize that he was provided with this opportunity. At no point in his brief does petitioner argue that the dispositional hearing was not properly noticed. Instead, he simply asserts that he did not attend the hearing due to transportation issues. This is insufficient to establish that he was not provided an opportunity to be heard, as required by the statute. Further, it is clear that petitioner could not establish that the DHHR was required to accommodate him any more than it already attempted to, especially given his extended failure to comply with the services that the DHHR arranged to have provided locally. As such, petitioner is entitled to no relief in this regard.

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 21, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison